## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL CAMERON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9502** |
| **DARREL VANNOY, ET AL.** | **SECTION "E"(1)** |

### ORDER AND REASONS

Before the Court is a Report and Recommendation issued by the Magistrate Judge recommending Petitioner Michael Cameron's petition for federal habeas corpus relief be dismissed with prejudice.[1] Petitioner filed objections to portions of the Magistrate Judge's Report and Recommendation.[2] For the reasons that follow, the Court **ADOPTS** the Report and Recommendation as its own, and hereby **DISMISSES** Petitioner's petition for relief.

### BACKGROUND

**I.     General Factual and Procedural Background**

On November 29, 2010, Eric Roy, Jr. was attending a concert at the Republic nightclub in New Orleans.[3]  While in the V.I.P. section of the club, Mr. Roy was attacked and stabbed in the head and neck.[4] After an extended hospital stay and several surgical procedures, Mr. Roy was taken off of life support.[5]

On April 11, 2011, Petitioner was charged by a bill of indictment with second degree murder of Eric Roy, Jr. in violation of La. Rev. Stat. § 14:30.1.[6] After hearings held on

---

[1] R. Doc. 22. Documents filed in the federal action before this Court, case no. 18-9502, are cited as "R. Doc. #" whereas documents from the state court record are cited as "State Rec., Vol. # of #."
[2] R. Doc. 23.
[3] *State v. Cameron*, 152 So. 3d 196, 198-201 (La. App. 4th Cir. 2014); State Rec., Vol. 7 of 8.
[4] *Id.*
[5] *Id.*
[6] State Rec., Vol. 1 of 8, Bill of Information dated April 11, 2011, amended December 5, 2012.

September 23, 2011 and February 9, 2012, the trial court denied Petitioner's motions to suppress evidence, statements and identifications.[7] On September 26, 2013, a jury found Petitioner guilty as charged,[8] and, on October 18, 2013, the trial court sentenced Petitioner to life imprisonment at hard labor.[9] On October 15, 2014, the Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's conviction and sentence.[10] On October 9, 2015, the Louisiana Supreme Court denied writs without stated reasons.[11] Petitioner did not file a writ of certiorari with the United States Supreme Court.

On December 12, 2016, Petitioner filed an application for post-conviction relief with the state district court raising the following claims for relief: (1) insufficient evidence, (2) ineffective assistance of counsel; (3) prosecutorial misconduct based on the use of inadmissible character evidence and false testimony; and (4) denial of the right to present a complete defense.[12] On January 26, 2017, the state district court found the claims without merit.[13] On April 5, 2017, the Louisiana Fourth Circuit Court of Appeal denied Petitioner's writ application.[14]

On September 28, 2018, the Louisiana Supreme Court denied petitioner's writ application, finding Petitioner failed to establish ineffective assistance of counsel under

---

[7] State Rec., Vol. 1 of 8, minute entry dated February 9, 2012; Motion to Suppress the Confession filed April 26, 2011; Motion to Suppress the Evidence filed April 26, 2019; Motion to Suppress Evidence of Identification filed April 26, 2011; State Rec., Vol. 4 of 8, hearing transcript of September 23, 2011; hearing transcript of February 9, 2012

[8] State Rec., Vol. 1 of 8, minute entry dated September 23, 2013; minute entry dated September 24, 2013; minute entry dated September 25, 2013; minute entry dated September 26, 2013; verdict dated September 26, 2013; State Rec., Vol. 5 of 8, trial transcript of September 23, 2013; trial transcript of September 24, 2013; State Rec., Vol. 6 of 8, trial transcript of September 25, 2013; State Rec., Vol. 7 of 8, trial transcript of September 26, 2013.

[9] State Rec., Vol. 1 of 8, minute entry dated October 18, 2013; State Rec., Vol. 7 of 8, hearing transcript of October 18, 2013.

[10] *State v. Cameron*, 152 So. 3d 196 (La. App. 4th Cir. 2014); State Rec., Vol. 7 of 8.

[11] *State ex rel. Cameron v. State*, 178 So. 3d 997 (La. 2015); State Rec., Vol. 8 of 8.

[12] State Rec., Vol. 2 of 8.

[13] State Rec., Vol. 1 of 8, Judgment dated January 26, 2017.

[14] *State v. Cameron*, No. 2017-K-0133 (La. App. 4th Cir. April 5, 2017); State Rec., Vol. 8 of 8.

*Strickland v. Washington*[15] and failed to satisfy his post-conviction burden of proof as to his other claims under La. Code Crim. P. 930.2.[16]

On October 9, 2018,[17] Petitioner filed the instant federal application seeking habeas corpus relief in which he asserts the following claims for relief: (1) insufficiency of the evidence; (2) ineffective assistance of counsel; (3) prosecutorial misconduct; and (4) denial of the right to present a complete defense.[18] The Government opposes this motion, arguing each of Petitioner's claims are meritless.[19] Plaintiff filed a reply.[20]

Upon review of the record, the Magistrate Judge determined this matter could be disposed of without an evidentiary hearing.[21] On January 30, 2020, the Magistrate Judge issued a Report and Recommendations finding each of Petitioner's claims to be without merit and recommending the petition be dismissed with prejudice.[22] On February 14, 2020, Petitioner's Objections to the Report and Recommendations were filed into the record.[23]

## II.    Petitioner's State Court Trial

To provide useful background regarding the state court trial held in this matter, the Court provides the following summary of the trial, as set forth in the Louisiana Fourth Circuit Appeal's opinion denying Petitioner's direct appeal of his conviction:

> At trial, the State called several witnesses who were present at Republic on the night that Mr. Roy was stabbed.  Through those witnesses, the State provided the jury with a detailed description of the stabbing

---

[15] 466 U.S. 668 (1984).

[16] *State ex rel. Cameron v. State*, 253 So.3d 137 (La. 2018) (per curiam); State Rec. Vol. 8 of 8.

[17] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner signed his petition and certified that he placed it in the prison mailing system on October 9, 2018.  R. Doc. 5 at 15.

[18] R. Doc. 5.

[19] R. Doc. 17.

[20] R. Doc. 19.

[21] R. Doc. 22 at 1.

[22] *Id.* at 54.

[23] R. Doc. 23.

incident and subsequent arrest and identification of Cameron.

Detective Tindell Murdock testified that he remembered being called to Republic on November 29, 2010, to investigate a stabbing. He arrived at approximately 3:30 a.m., and he located two witnesses while assisting the lead detective. He identified the witnesses as Seneca Johnson and Nicole Age. Det. Murdock testified that he interviewed Ms. Johnson about what she witnessed and that once he learned the Defendant was in custody in the back of a police car, he asked if she would identify a suspect. From there, Det. Murdock contacted Det. Willie Jenkins, who was also assisting in the matter. According to Det. Murdock, Det. Jenkins removed the Defendant from the vehicle and shined a light on him, and Ms. Johnson positively identified him as the suspect. Although the defense objected to any statements Det. Murdock said were made by Nicole Age, the court allowed Det. Murdock to testify that Nicole Age identified the Defendant that evening as the suspect.

On cross-examination Det. Murdock testified that the police conducted a "show-up procedure" because he felt from what he learned from Ms. Johnson that she could identify the suspect regardless of Ms. Johnson stating that she never saw the suspect's face. He testified that he never spoke to the Defendant, nor did he check his hands for blood or bruising. The Detective admitted that he had no written reports from that night because he was not the lead detective.

Ms. Johnson testified at trial that she knew Mr. Roy from going out to nightclubs and that she saw him on November 29, 2010 at Republic. She further testified that she was upstairs in the V.I.P. section of the nightclub during the time that Mr. Roy was attacked. Ms. Johnson stated that she and Mr. Roy went to the bar to buy her friend a drink, and when she turned around she saw a "guy with a bald head, a red jacket" hit Mr. Roy. She claimed that everyone started to scream as he fell to the floor bleeding from his head. Ms. Johnson further stated that Mr. Roy was breathing while he was on the floor, and that she was pushed out of the way by security. She also testified that approximately thirty to forty-five minutes after the incident an NOPD officer asked her if she could identify the person who struck Mr. Roy, and she identified a male in handcuffs, dressed as she earlier described, as the perpetrator.

On cross-examination Ms. Johnson was able to remember names of her friends who were also in proximity to the stabbing so that the defense could call them as witnesses.

Also at trial, Caroline Koerner testified that she knew Mr. Roy, and she was in Republic on November 29, 2010. She testified that the Defendant pushed his way through a crowd of people as if he wanted to instigate a fight. She said that she witnessed the Defendant push Mr. Roy, and he pushed the Defendant back. She further stated that the Defendant was standing approximately one person away from her when she saw him reach into his left pocket, take out a knife, flip the knife open, place it in his right hand, walk up to Mr. Roy, and stab him in the head twice. Ms. Koerner testified that she saw Mr. Roy fall to the ground, and she put her scarf on his head.

Just after the incident, Ms. Koerner testified that an officer came upstairs where she was with Mr. Roy and asked her what happened. At that time, she was taken outside of the nightclub, where she met with detectives and positively identified the Defendant.

Det. Michael Flores testified that over the radio, he learned of a stabbing at Republic, and went to the nightclub. He testified that when he arrived, he spoke with other officers at the scene and learned a victim had been stabbed, and that another victim, who had a part of his ear bitten off, helped chase down two suspects. Det. Flores was informed that the suspects were in the back of the police car.

Det. Flores testified that when he went to the second floor of the nightclub, Mr. Roy's body had already been removed, and there was blood and trash on the floor. He testified that he met with Ms. Kroener and Jeremiah LaFleur, who both gave him a description of the suspect. He stated that he then conducted two separate show-ups, one for the Defendant and one for Jeremy Cameron.

Det. Flores left Republic and went to the hospital, where he met with the other victim, Mr. Kaiser. Mr. Kaiser told him that his ear had been bitten by Jeremy Cameron, and he corroborated Ms. Kroener and Mr. LaFleur's statements. Det. Flores testified that he was called back to the scene from the hospital by the manager of Republic, where he located a knife on the ground where the police unit holding the Defendant and his brother had been earlier parked. He called the crime lab, who came back to photograph the knife.

Mr. LaFleur testified that he was employed at Republic as a bartender on the evening of November 29, 2010. He stated that on that night, he went to the second floor to take a break from the bar on the first floor where he was working. He recalled that he was standing at the left side of the bar facing the V.I.P. section when a physical altercation broke out in front of him. Mr. LaFleur stated that he witnessed a large man, whom he knew as Kevin, spreading the crowd apart in an attempt to break things up. He further testified that he saw a person in a bright red shirt give Kevin an "overhead" punch, and then he saw Kevin stumble to the ground. At that time, Mr. LaFleur then left the scene and told other Republic employees about the chaos going on upstairs.

Mr. LaFleur further testified that he was going to go back into the nightclub but ended up chasing down and apprehending the person he saw earlier in the bright red shirt. He stated that shortly after he apprehended the suspect, a policeman took over the stop. He also testified that he spoke to officers that evening and was able to provide a description of the suspect and identify the suspect as the same person whom he saw give an overhead punch to Mr. Roy.

Nicole Age testified that she was acquainted with Mr. Roy, and on the evening of November 29, 2010, he passed her with two drinks in his hands in the V.I.P. room. She stated that he gave her a sip of one of the drinks and was walking away when a fight broke out in front of them. Mr. Roy asked "what's going on?" and proceeded in the direction of the fight. She testified

that she saw a bald man with a red shirt hit Mr. Roy in the head, and then saw Mr. Roy bleeding.  She stayed with Mr. Roy until the paramedics arrived, and then she was asked by detectives not to leave.  Ms. Age testified that at the scene she identified the Defendant as the man who struck Mr. Roy.

Wendy Wiltz testified at trial that she worked for the event promoter and that she knew Mr. Roy because he was a Sunday regular at Republic. She testified that she was at Republic the evening of November 29, 2010, and she was talking to Mr. Roy at the top of the stairs in the V.I.P. section when a fight broke out.  She testified that Mr. Roy pushed her out of the way, and she saw a bald man in a red shirt reaching into his boot.  She stated that she grabbed a waitress, and they went behind the bar into the office and told the promoter to call for more security.  When she returned, she saw Mr. Roy on the ground.  She left the nightclub and later returned to retrieve her car.  Upon her return she was walking across the street to get her car when she saw a knife in the street.

Desere Chachere testified that she has known the defendant since 2006 or 2007.  She identified him in court.  She testified that she was at Republic when the incident occurred, and she saw the Defendant and his brother Jeremy.  She described her surroundings and testified that she was standing at the bar in the second floor V.I.P. section when a fight ensued. She said she and the Defendant were standing next to one another and that the Defendant was not involved in the fight, did not push anyone, and did not stab anyone.

On cross-examination, Ms. Chachere testified that she saw Jeremy Cameron involved in the fight that was taking place on the stairs.  She testified that at no time did the Defendant seek to assist his brother in the altercation.  She left when she and Michael Cameron were ushered out by security.  She further testified that she later saw the Defendant and his brother handcuffed outside of the nightclub, but never informed the authorities that the Defendant was not involved in the fight inside the nightclub.  Ms. Chachere further stated that the Defendant was wearing a red shirt and jeans the night of the murder.

The Defendant testified at trial that he drove to Republic with his brother Jeremy and that he parked his car on a nearby street.  He testified that he was at the bar, standing next to Ms. Chachere, when he saw his brother get into a fight.  He also testified that he was ushered out with the crowd and was grabbed when exiting, frisked, asked by officers to show his hands, and then placed in the back of a police car.  He testified that he did not get into a fight that evening, did not have a knife, and did not have blood on his hands or his clothes.

An audio tape from a jail call revealed that the Defendant mentioned helping his brother during the incident. On cross-examination, the Defendant testified that he mentioned assisting his brother during the phone conversation, but that he only wanted the people fighting with his

6

brother to know who he was.[24]

## STANDARD OF REVIEW

In reviewing the Magistrate Judge's Report and Recommendations, the Court must conduct a de novo review of any of the magistrate judge's conclusions to which a party has specifically objected.[25] As to the portions of the report that are not objected to, the Court needs only review those portions to determine whether they are clearly erroneous or contrary to law.[26]

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[27] A federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[28] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."[29]

---

[24] *Cameron*, 152 So. 3d at 198-201 (internal footnotes omitted); State Rec. Vol. 7 of 8 (internal footnotes omitted).
[25] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[26] *Id.*
[27] 28 U.S.C. § 2254(d)(2)
[28] *Id.* § 2254(d)(1).
[29] *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

The AEDPA requires that a federal court "accord the state trial court substantial deference."[30] However, the AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.[31] For unexhausted claims that were not considered on the merits in the state courts, the pre-AEDPA standard of review applies.[32]

## LAW AND ANALYSIS[33]

## I.   Petitioner is not Entitled to an Evidentiary Hearing

In his objections to the Magistrate Judge's Report and Recommendation, Petitioner asks the Court "grant him the relief he seeks, or, in the alternative, grant him an evidentiary hearing . . ."[34] Accordingly, the Court considers whether Petitioner is entitled to an evidentiary hearing, before proceeding to the merits of Petitioner's claims. Pursuant to 28 U.S.C. § 2254(e)(2), a habeas petitioner is only entitled to an evidentiary hearing if the petitioner shows that:

> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[35]

---

[30] *Brumfield v. Cain*, 135 S. Ct. 2269 (2015).

[31] 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).

[32] *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

[33] The Court notes the Government concedes Petitioner's application was timely filed within the one-year period established by the AEDPA. R. Doc. 17 at 4.

[34] R. Doc. 23.

[35] 28 § 2254(e)(2).

In this case, Petitioner has not argued nor shown that any of his claims rely on a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence. Nor has Petitioner argued nor shown that but for a constitutional error no rational jury would have convicted Petitioner. In fact, for the reasons discussed below, the Court finds the record does not reflect that any constitutional error was committed at Petitioner's trial, and the record supports the jury's decision to convict Petitioner as a rational decision. As a result, the Court finds Petitioner is not entitled to an evidentiary hearing prior to the Court's adjudication of Petitioner's claims.

## II.   Petitioner is Not Entitled to Relief on his Insufficient Evidence Claims

### A.   The Louisiana Fourth Circuit Court of Appeal denied Petitioner's insufficient evidence claims and likewise held he was not entitled to relief under *Manson v. Brathwaite.*

For the sake of clarity, the Court provides the Louisiana Fourth Circuit Court of Appeal's ruling on Petitioner's claim of insufficient evidence. In denying Petitioner's insufficient evidence claim, the Louisiana Fourth Circuit Court of Appeal held:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, this Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The factfinder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence.
>
> In addition, as a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. The reviewing court must examine the reliability of

an identification according to the test set out in Manson v. Brathwaite: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.

The Defendant does not argue that the State failed to prove the elements of second degree murder, but rather, that the State failed to produce a witness that identified him as the murderer. He maintains that the witnesses were only able to identify him from his clothing, and one witness, Caroline Koerner, contradicted her testimony when she initially stated that she saw his features and that he had short hair and khaki pants.

The Defendant submits that in light of *Jackson v. Virginia*, he is not seeking this Court's substitution of judgment for that of the jury; however, he contends that a review of the record will reveal that a rational trier of fact would not have concluded, beyond a reasonable doubt, that he killed Mr. Roy.

The State argues that the Defendant's assignment of error is without merit because it was able to establish that the police, staff from Republic, and others, chased and apprehended the defendant after the stabbing, and those events were corroborated by eyewitnesses.

. . .

In light of *Manson v. Brathwaite*, *supra*, each eyewitness had the opportunity to see the Defendant at the time of the stabbing. The witnesses testified that, although dim, there was ample lighting in the nightclub, and they were not impaired by alcohol or in any other way to cause their attention to be disrupted. The witnesses all gave an accurate description of the Defendant, and when asked to identify him, the witnesses were confident in their identifications, which took place within a reasonably close time to the murder.

Although the Defendant's testimony, which was somewhat corroborated by Ms. Chachere, maintained that he did not have a knife, was not in a fight, and was grabbed by police among all of the chaos and placed in the back of a police car, the jury was also presented with numerous eyewitnesses that contradicted his account. Ms. Johnson, Ms. Age, Ms. Kroener and Mr. LaFleur all identified the Defendant on the evening of the murder. Even though the eyewitnesses did not give a detailed facial description of the Defendant, they were all in close proximity to him and the incident. They described, with some variation, a bald, black male, wearing a red shirt and dark pants. This testimony established that each witness had sufficient time to observe the Defendant. This Court cannot disturb the jury's decision in weighing the credibility of the witnesses unless it is clearly contrary to the evidence, which in this case it is not.

In the present case, there was sufficient evidence for the jury to find that Michael Cameron was the person who stabbed and killed Eric Roy, Jr. The evidence is overwhelming with eyewitness testimony, and the jury was able to compare the testimony to the video surveillance tapes from the evening of the murder. A review of the trial record established that the

evidence was clearly sufficient for a jury to find Michael Cameron guilty of second degree murder. Accordingly, his conviction and sentence are affirmed.[36]

## B. Petitioner's insufficient evidence claims were exhausted in state court.

Unlike Petitioner's other claims for federal habeas relief, the answer to whether Petitioner properly exhausted all of his insufficient evidence claims is less obvious. Accordingly, the Court considers the issue.

Section 2254(b)(1)(A) precludes federal habeas relief unless "the applicant has exhausted the remedies available in the courts of the State."[37] Whether a federal habeas petitioner has exhausted state-court remedies is a question of law.[38] As the Fifth Circuit has explained, "[t]he exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."[39] Generally, this means a petitioner must directly raise his claims in state court in order for his claims to be exhausted before reaching federal court.

Petitioner argues there was insufficient evidence to prove he was the perpetrator of the crime of which he was convicted because, namely, the prosecution failed to meet its burden of negating a reasonable probability of misidentification and that the show-up identifications of Petitioner by witnesses were unjustified, unduly suggestive, and unreliable.[40] These claims were properly raised and exhausted in state court. However, this is not the end of the Court's exhaustion inquiry, as Petitioner raises another basis for arguing his conviction was supported by insufficient evidence. In arguing his conviction

---

[36] *Cameron*, 152 So. 3d at 197-98, 201-02 (internal quotation marks, brackets, and footnotes omitted); State Rec., Vol. 8 of 8 (internal quotation marks, brackets, and footnotes omitted).

[37] 28 U.S.C. § 2254(b)(1)(A).

[38] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001).

[39] *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

[40] R. Doc. 5 at 4.

is unsupported by sufficient evidence because the show up identifications were unreliable,[41] Petitioner references *Manson v. Brathwaite*.[42] To the extent Petitioner raises a *Brathwaite* claim, the Court must determine whether Petitioner properly exhausted this claim in state court.

Although Petitioner did not raise this claim in state court,[43] the Louisiana Fourth Circuit Court of Appeal, in denying petitioner's insufficiency of the evidence claim, addressed the reliability of the witnesses' identification of Petitioner under *Brathwaite*, denying a challenge to the reliability of the show up identifications as meritless.[44] Although exhaustion requires that the substance of the habeas claim has been fairly presented to the highest state court, "[t]he presentation requirement . . . is excused 'when a state court with the authority to make final adjudications undertook to decide the claim on its merits *sua sponte*.'"[45] "Such an exception makes sense in light of § 2254(b)(1)(A)'s long-recognized policy "'to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"[46] Because the Louisiana Fourth Circuit Court of Appeal *sua sponte* denied Petitioner's challenge to the reliability of the show up identifications under *Brathwaite*, and the Louisiana Supreme Court subsequently affirmed the denial of relief without assigning additional reasons,[47] the exhaustion requirement as to any *Brathwaite* claim raised by Petitioner in the instant 2254 motion is excused.[48] Accordingly, the Court may proceed to the merits of each of Petitioner's

---

[41] R. Doc. 5-1 at 18.

[42] 432 U.S. 98 (1977).

[43] *See* State Rec., Vol. 7 of 8, Appellant Brief. Although the table of contents of the appellant brief mentions *Brathwaite*, the body of the brief contains no discussion of *Brathwaite*.

[44] *Cameron*, 152 So. 3d at 197-198, 201-202; State Rec., Vol. 8 of 8.

[45] *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004) (quoting Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 23.3a (4th ed.1998)).

[46] *Id*. at 354-55 (quoting *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).

[47] *Cameron*, 178 So. 3d 997; State Rec., Vol. 8 of 8.

[48] The Court notes that, in opposing Petitioner's instant § 2254 petition, the Government does not argue for

insufficient evidence claims.[49]

### C. Petitioner is not entitled to relief on his insufficient evidence claims based on a failure to prove his identification beyond a reasonable doubt.

Petitioner argues the evidence was insufficient to support his conviction because the State failed to prove beyond a reasonable doubt his identity as the perpetrator. More specifically, Petitioner argues: none of the witnesses made an in-court identification of Petitioner; the witnesses' testimony was so contradictory that no reasonable juror could have found Petitioner guilty; and there was no scientific evidence connecting Petitioner to the crime. The Magistrate Judge found each of these claims to be without merit.[50] Because Petitioner appears to object to the Magistrate Judge's conclusions as to each of these insufficient evidence claims,[51] the Court must conduct a de novo review of each of these claims.[52] Due to the inter-relatedness of these claims, the Court addresses them simultaneously.

The Supreme Court explained in *Jackson v. Virginia* the "critical inquiry on review of the sufficiency of the evidence to support a criminal conviction" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[53]

---

dismissal based on Petitioner's failure to exhaust a *Brathwaite* claim. R. Doc. 17 at 5 (acknowledging "no such [*Brathwaite*] claim was exhausted" but asserting "because the sufficiency claim is exhausted and not in default, it will be addressed below, and given the overlap here between the issue of sufficiency and *Brathwaite*'s second prong, it will be seen that Cameron could not have prevailed on a separate *Brathwaite* claim).

[49] The Court finds additional support for this conclusion in section 2254(b), which provides "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b); *see also Wheeler v. Quarterman*, 262 F. App'x. 588, 589 (5th Cir. 2008).

[50] R. Doc. 22 at 10-24.

[51] R. Doc. 23 at 2-6.

[52] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").

[53] 443 U.S. 307, 318-19 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original).

"The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[54]

Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[55] Furthermore, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the standards of review mandated by the AEDPA, the standard to be applied by this Court is "twice-deferential."[56] As the Fifth Circuit has observed, "a state prisoner's burden is especially heavy on habeas review of the sufficiency of the evidence. The jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law."[57]

"Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."[58] Accordingly, Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings.[59] In these proceedings,

---

[54] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).

[55] 28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).

[56] *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. at 651.

[57] *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks omitted).

[58] *Coleman*, 132 S. Ct. at 2064 (citation and internal quotation marks omitted).

[59] *See, e.g., Foy v. Donnelly*, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992).

only the *Jackson* standard need be satisfied.

In the instant case, Petitioner was charged with and convicted of second degree murder. Under Louisiana law, second degree murder is defined as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm."[60] In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator.[61] Further, "where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof."[62]

To the extent Petitioner argues in-court identifications were required to negate any reasonable probability of misidentification, Petitioner is incorrect. First, two police officers made in-court identifications of Petitioner as the man in the red shirt arrested at the scene.[63] Second, Petitioner points to no cases, and the Court is aware of none, holding that in-court identifications are required to negate any reasonable probability of misidentification. To the extent Petitioner argues in-court identifications by the two witnesses who saw Petitioner's face at the time of the stabbing, Johnson and Koerner, were required to negate a reasonable probability of misidentification, Petitioner likewise provides no legal authority to support this argument. Moreover, Petitioner's argument that "the two witnesses who said they saw the perpetrator's face did not identify Cameron . . . in open court"[64] is misleading, as neither of these two witnesses were explicitly asked to identify Petitioner in court. Nevertheless, both witnesses testified that they saw Petitioner at the time of the stabbing, the witnesses gave an accurate description of

---

[60] La. Rev. Stat. § 14:30.1(A)(1).
[61] *State v. Bovie*, 665 So.2d 558 (La. App. 5 Cir. 11/28/95).
[62] *State v. Vasquez*, 729 So.2d 65, 69 (La. App. 5 Cir. 1999).
[63] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, pp. 58, 132.
[64] R. Doc. 23 at 2.

Petitioner, and each witness testified that she was confident in her identification of Petitioner, which took place within a reasonably close time to the murder.[65]

To the extent Petitioner argues the State was required to produce scientific evidence connecting Petitioner to the crime in order to negate any reasonable probability of misidentification, Petitioner is again incorrect. Under both federal and Louisiana law, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the testimony of an eyewitness is generally sufficient to support a conviction.[66] In this case, several eyewitnesses identified Petitioner as the perpetrator. As a result, "scientific evidence" connecting Petitioner to the crime was not required to negate any reasonable probability of misidentification.

With respect to Petitioner's argument the witnesses' testimony was so contradictory that no reasonable juror could have found Petitioner guilty, credibility determinations are the province of the jury and are entitled to a high level of deference by the reviewing federal court.[67] Federal habeas court generally will not grant relief on a sufficiency claim grounded on matters of credibility.[68] According to Petitioner, the jury should have found the State's witnesses' testimony incredible and should have found Petitioner's testimony and the defense's other witnesses' testimony credible. Discrepancies in witness testimony go to credibility, and, as a result, the jury is charged

---

[65] *Cameron*, 152 So. 3d at 197-98, 201-02; State Rec., Vol. 8 of 8.

[66] *See United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." (citing *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979), *cert. denied*, 441 U.S. 951 (1979))); *State v. Neal*, 796 So.2d 649, 658 (La. 2001); *State v. Williams*, 3 So.3d 526, 529 (La. App. 5th Cir. 2008).

[67] *Marshall v. Lonberger*, 459 U.S. 422, 433-35 (1983) (factfinder's credibility determinations are entitled a high measure of deference on federal review); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (federal court may not substitute its own interpretation of evidence or view of witness credibility for that of the jury).

[68] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review.")

with weighing such discrepancies.[69] Even if the jury could have drawn conflicting inferences from the testimony of the State's witnesses and the defendant's witnesses, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict."[70] As a result, this Court will not disturb the jury's rational decision to convict Petitioner on the basis that the jury should not have found the State's witnesses credible.

Having delineated what is not required to negate a reasonable probability of misidentification, the Court turns to Petitioner's overarching argument, that the State failed to prove beyond a reasonable doubt his identity as the perpetrator. In analyzing this argument, the key question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found [Petitioner's identity as the perpetrator] beyond a reasonable doubt."[71] Upon considering the State's exhaustive evidence establishing Petitioner's identity as the perpetrator, *supra* pp. 9-11, the Court finds a rational jury could have found the prosecution met its burden of establishing Petitioner's identity as the perpetrator beyond a reasonable doubt. As the Louisiana Fourth Circuit Court of Appeal held, "there was sufficient evidence for the jury to find that Michael Cameron was the person who stabbed and killed Eric Roy, Jr. The evidence is overwhelming with eyewitness testimony, and the jury was able to compare the testimony to the video surveillance tapes from the evening of the murder."[72]

For the foregoing reasons, the Court finds Petitioner's insufficient evidence claims raised directly on appeal are without merit and, accordingly, must be dismissed.

---

[69] *State v. Thomas*, 13 So.3d 603, 607 (La. App. 5 Cir. 2008).
[70] *Ramirez v. Dretke,* 398 F.3d 691, 695 (5th Cir. 2005).
[71] *Jackson*, 443 U.S. at 318-19 (1979).
[72] *Cameron*, 152 So. 3d at 197-98, 201-02 (internal quotation marks, brackets, and footnotes omitted); State Rec., Vol. 8 of 8 (internal quotation marks, brackets, and footnotes omitted).

**D.      Petitioner is not entitled to relief on his claim that the witnesses' identification of petitioner via the "show up" procedure lacked reliability.**

In addition to the above claims of insufficiency Petitioner directly raised on appeal, Petitioner asserts the show up identification of Petitioner by four eyewitnesses was unreliable.[73] Petitioner specifically objects to the Magistrate Judge's conclusion that show up procedure did not lead to a substantial likelihood of misidentification,[74] and, accordingly, the Court reviews this conclusion de novo.[75]

In *Brathwaite*, the United States Supreme Court held "reliability is the linchpin in determining the admissibility of identification testimony" under the Due Process Clause.[76] A two-step process governs the admissibility of identification evidence:

> First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, 'under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.'[77]

Although "'show up' identifications are generally considered impermissibly suggestive,"[78] and even if the Court assumes the show-up procedure in this case employed was suggestive in this case, under the totality of the circumstances, the suggestiveness of the show up did not lead to a substantial likelihood of irreparable misidentification. Five factors apply in assessing the reliability of an identification: (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3)

---

[73] R. Doc. 5-1 at 12.

[74] R. Doc. 23 at 2.

[75] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").

[76] *Brathwaite*, 432 U.S. at 114.

[77] *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006) (quoting *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990)).

[78] *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990); *United States v. Lang*, No. 06-30124, 2007 WL 1725548, at *10 (5th Cir. June 14, 2007); *Montez v. Thaler*, No. 2:09-CV-051, 2012 WL 487094, at *7 (N.D. Tex. Jan. 27, 2012), *recommendation adopted*, 2012 WL 489156 (N.D. Tex. Feb. 15, 2012).

the accuracy of the witness' description of the perpetrator; (4) the witness' level of certainty concerning the identification; and (5) the time between the crime and the confrontation.[79] As the Louisiana Fourth Circuit Court of Appeal held in applying these five factors, each witnesses' identification of Petitioner as the perpetrator was reliable:

> Each eyewitness had the opportunity to see the Defendant at the time of the stabbing.  The witnesses testified that, although dim, there was ample lighting in the nightclub, and they were not impaired by alcohol or in any other way to cause their attention to be disrupted.  The witnesses all gave an accurate description of the Defendant, and when asked to identify him, the witnesses were confident in their identifications, which took place within a reasonably close time to the murder.[80]

Petitioner argues that "not one of the witnesses who allegedly chose Cameron as a result of the showup procedure did not see the perpetrator's face; and, the two witnesses who said they *saw* the perpetrator's face did not identify Cameron during the showup or in open court."[81] Contrary to Petitioner's position, each of the eyewitnesses identified Petitioner as the perpetrator. To the extent Petitioner suggests the identifications were unreliable merely because show ups are generally suggestive, this challenge fails because suggestive procedures do not automatically render identifications unreliable.[82] Further, "evidence with some element of untrustworthiness is customary grist for the jury mill."[83] The existence of some countervailing considerations, such as the witnesses' relatively brief opportunity to the perpetrator inside the club, likewise does not render the witnesses' identification of Petitioner unreliable. Weighing the five factors described

---

[79] *Brathwaite*, 432 U.S. at 114-15.
[80] *Cameron*, 152 So. 3d at 197-98, 201-02; State Rec., Vol. 8 of 8.
[81] R. Doc. 23 at 2 (emphasis in original).
[82] *See Neil v. Biggers*, 409 U.S. 188, 198 (1972) ("[T]he admission of evidence of a showup without more does not violate due process."). *See also Brathwaite*, 432 U.S. at 114 (holding that even if an identification procedure is suggestive, the identification will only be excluded as unreliable "if the suggestiveness leads to a substantial likelihood of irreparable misidentification.").
[83] *Brathwaite*, 432 U.S. at 116.

above, the Court finds, as the Louisiana Fourth Circuit Court of Appeal did, that the identifications were reliable because each eyewitness had the opportunity to see Petitioner at the time of the stabbing, the witnesses all gave an accurate description of Petitioner, and each witness was confident in their identification of Petitioner, which took place within a reasonably close time to the murder.[84]

The Court finds Petitioner has failed to establish he is entitled to relief as to his insufficient evidence claims, including his assertion that the "show up identification" was unreliable under *Brathwaite*.

## II.   Petitioner is Not Entitled to Relief on his Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate *both*: (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense.[85] A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[86] "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."[87]

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed

---

[84] *Cameron*, 152 So. 3d at 197-98, 201-02; State Rec., Vol. 8 of 8.
[85] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[86] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).
[87] *Strickland*, 466 U.S. at 689.

by the Sixth Amendment.[88] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[89] Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances.[90] "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[91] A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.[92]

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[93] In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."[94] In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[95] If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry—deficient performance or actual prejudice—it may dispose of the ineffective assistance claim without addressing the other prong.[96]

In arguing his conviction should be vacated due to his counsel's ineffective assistance, Petitioner argues his counsel was ineffective for failing to object to the following: inadmissible testimony regarding the victim's character, Detective Murdock's

---

[88] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[89] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).
[90] *See Strickland*, 466 U.S. at 689.
[91] *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).
[92] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).
[93] *Strickland*, 466 U.S. at 694.
[94] *Id.*
[95] *Crockett*, 796 F.2d at 793.
[96] *Strickland*, 466 U.S. at 697.

false testimony that Seneca Johnson identified petitioner, the State referencing Petitioner's post-arrest silence, and Dr. Hunt's ambiguous testimony. Petitioner further argues his counsel was ineffective in failing to present the testimony of a blood splatter expert, failing to reveal all of Petitioner's convictions to the jury, failing to provide an exception to the hearsay rule during counsel's questioning of Tasia Taylor, and acting unprofessionally throughout the trial. Each of these ineffective assistance of counsel claims were properly exhausted in state court.

The Magistrate Judge found each of Petitioner's ineffective assistance claims without merit and in turn recommended dismissal of these claims.[97]

While the Court must conduct a de novo review of the Magistrate Judge's conclusions to which Petitioner has specifically objected,[98] the Court needs only review the remaining un-objected-to portions of the Magistrate Judge's Report and Recommendations regarding Petitioner's ineffective assistance claims to determine whether they are clearly erroneous or contrary to law.[99] Petitioner does not object to the following conclusions reached by the Magistrate Judge: (1) counsel was not ineffective in deciding to not object to Dr. Hunt's ambiguous testimony; (2) counsel was not ineffective in deciding not to present the testimony of a blood splatter expert, and (3) counsel was not ineffective in electing to not provide an exception to the hearsay rule during counsel's questioning of Tasia Taylor. Upon review, the Court holds these un-objected-to conclusions are neither clearly erroneous nor contrary to law. Rather, the Court finds the Magistrate Judge's following conclusions are clearly in line with the law:

- With respect to Dr. Hunt's testimony, "[Defense counsel] made a

---

[97] R. Doc. 22 at 31-53.
[98] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[99] *Id.*

tactical decision to conduct a brief cross-examination confirming that Dr. Hunt could not identify the perpetrator of the crime. Defense counsel's strategy falls soundly within the realm of reasonable trial strategy."[100] Petitioner has not overcome the strong presumption that defense counsel's strategy was reasonable, and thus has not established the deficiency prong under *Strickland*.

- With respect to the decision to not call a blood spatter expert to testify, the Fifth Circuit "require[s] petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense."[101] "[P]etitioner merely speculates that a blood splatter expert would have testified that it is unlikely for a perpetrator to stab someone without getting blood splatter on the perpetrator. Petitioner, however, fails to even identify a specific blood splatter expert or any other expert. Petitioner has presented no evidence, such as affidavits from any expert witness, demonstrating that he or she was available to testify at the trial and would in fact have testified in a manner beneficial to the defense. Therefore, he obviously failed to meet his burden of proof with respect to this claim."[102]

- With respect to the hearsay exception issue concerning Tasia Taylor's testimony, "Defense counsel vigorously and repeatedly argued that testimony regarding a defendant's statement is not hearsay and that the telephone call had been played for the jury twice. When his arguments were unsuccessful, he moved for a mistrial, which was denied. The fact that defense counsel's arguments were unsuccessful does not render his assistance constitutionally ineffective."[103]

The Court will now proceed to conduct a de novo review as to the Magistrate Judge's conclusions to which Petitioner specifically objected. Petitioner objects to the Magistrate Judge's conclusions that counsel was not ineffective in: electing to not object to inadmissible testimony regarding the victim's character; refraining from to Detective

---

[100] R. Doc. 22 at 44-45.

[101] *Id*. at 45-46 (citing *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010)).

[102] *Id*. at 46 (citing *Cox v. Stephens*, 602 F. App'x. 141, 146 (5th Cir. 2015); *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009); *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009).

[103] *Id*. at 48 (citing *Martinez v. Dretke*, 99 F. App'x. 538, 543 (5th Cir. 2004)).

Murdock's false testimony that Seneca Johnson identified Petitioner; deciding to not object to the State referencing Petitioner's post-arrest silence; choosing to not question Petitioner about all of his prior convictions; and the level of professionalism with which counsel conducted himself.[104] The Court addresses each conclusion separately and, in turn, finds Petitioner is not entitled to relief as to any of his ineffective assistance of counsel claims.

### A. Petitioner has not shown his counsel was ineffective in electing to not object to inadmissible testimony regarding the victim's character.

At trial, when the prosecutor asked the victim's father, Roy, Sr., to describe his son, he responded:

> Well, he's the type of son that most of you wish you would have had.  He was loving, caring, very affectionate, very protective.  Never gave me a day of trouble- twenty-six years of his life.  Matter of fact, I can even go as far as to say even when I was working on my Master's degree, he was in high-school.  He showed me short cuts how to do [sic] – so a very educated, very intelligent young man who'd give you the shirt of his back any date.[105]

The prosecutor also asked the witness to describe his experience while the victim was in the hospital after the stabbing, to which the victim's father responded:

> I – my son was a blessing to so many.  While he was in the hospital – I saw young men and young ladies praying – had never prayed before.  He had friends flying in from California, from all over the country, just to check on him.  He was just that kind of person.  If you was in need, he came to your assistance and so that whole time, it was just a lot of praying, a lot of medical attention, a lot of love.  Just how he lived his life.[106]

Petitioner claims his counsel was ineffective for failing to object to the victim's father's testimony regarding his son's character as inadmissible character evidence under La. Code Crim. Evid. art. 404(a)(2). However, Petitioner has not overcome the strong

---

[104] R. Doc. 23 at 7-9.
[105] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, p. 14.
[106] *Id.* at p. 15.

presumption that this challenged action falls within the realm of sound trial strategy.[107] The trial record reflects defense counsel was careful not be over aggressively in his treatment of the victim's grieving father in front of the jury. For instance, on cross-examination, defense counsel offered the witness his condolences, saying: "Your son was a very fine man and we accept that he shouldn't have been lost to your [sic] or your wife and his family."[108] Taking actions in order to avoid antagonizing the jury of a murder trial, including deciding to not object to a grieving father's brief testimony about his son's character, is undoubtedly within the real of reasonable trial strategy. This is true regardless of whether counsel's objection to the grieving father's testimony as inadmissible character evidence would have been successful.[109]

Petitioner points out that the "brevity" of the father's testimony does not weigh on whether the character testimony is impermissible.[110] While this is true, the brevity of the testimony is relevant in confirming defense counsel's decision to not object to the testimony was strategic and entitled to deference. Had the victim's father opined on his son's character for an extensive period of time, there would have been at least a somewhat greater likelihood that the testimony would have prejudiced Petitioner. However, the father's testimony regarding his son's character was brief, and, accordingly, the Court cannot say defense counsel's decision to not object to it was unreasonable.

Further, Petitioner has not shown a reasonable likelihood that the outcome of the trial would have been different had defense counsel objected to the victim's father's testimony about his son's character. At trial, Petitioner's defense was that he was actually

---

[107] *Strickland*, 466 U.S. at 689.

[108] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, p. 17.

[109] *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992); *see also Spicer v. Cain*, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007).

[110] R. Doc. 23 at 8.

innocent and was mistakenly identified as the perpetrator. The victim's father testified regarding his son's personality; he did not testify as to whether he believed Petitioner was the individual who took his son's life.[111] Moreover, as discussed above, the father's testimony was brief, and thus the likelihood that the outcome of Petitioner's trial was in any way impacted by this testimony is very low. As a result, Petitioner has not shown— nor is it evident how—the victim's father's brief testimony regarding the victim's character in any way affected his defense.

Because Petitioner has failed to establish either prong under *Strickland*, he is not entitled to relief as to his claim that counsel was ineffective in failing to object to the victim's father's testimony as impermissible character evidence.

### B.    Petitioner has not shown his counsel was ineffective in refraining from objecting to Detective Murdock's testimony that Seneca Johnson identified Petitioner.

At trial, Detective Murdock testified that he obtained a statement from an eyewitness, Seneca Johnson, and subsequently conducted a show-up identification of Petitioner.[112] Murdock testified Johnson positively identified petitioner.[113] On cross-examination, defense counsel asked Murdock if he was aware Johnson never saw the perpetrator's face at the time of the incident, to which Murdock responded he believed Johnson had told him she had seen the perpetrator's face.[114] He further testified: "According to what I learned after interviewing her, I felt she was able to make a positive identification. Therefore, we conducted the show-up procedure."[115]

Seneca Johnson testified that, although she did not see the face of the perpetrator

---

[111] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, pp. 13-17.
[112] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, p. 53.
[113] *Id.* at 54.
[114] *Id.* at 61.
[115] *Id.* at 60.

who stabbed the victim,[116] she saw a bald man wearing a red shirt with a black shirt underneath and dark pants stab the victim.[117] When Detective Murdock showed Petitioner to Johnson at the scene, she identified Petitioner as the perpetrator.[118] At trial, she testified she was sure about her identification of Petitioner as the perpetrator.[119]

Petitioner claims his counsel was ineffective for failing to object to Detective Murdock's "false" testimony that Seneca Johnson positively identified petitioner as the perpetrator, arguing that Murdock "knew Johnson did not see the perpetrator's face" but conducted the show up procedure anyway.[120] Petitioner has not established Murdock testified falsely at trial. To the contrary, the record reflects that Murdock testified truthfully. Murdock testified he believed Johnson told him she had seen the perpetrator's face,[121] and, therefore he felt she would be able to make a positive identification when he subsequently conducted the show-up procedure.[122] Murdock testified Johnson positively identified Petitioner as the perpetrator of the crime,[123] and the record confirms that, when the show-up procedure was conducted, Johnson positively identified Petitioner as the man who had stabbed the victim, and she later testified at trial that she was positive of this identification.[124] Because Petitioner has not shown Murdock's testimony was false, it is entirely unclear how counsel's decision to not objection to Murdock's testimony as false falls outside of the objective standard of reasonableness. The record reflects that rather than raising a baseless objection, defense counsel vigorously cross examined both

---

[116] *Id.* at pp. 31-32.
[117] *Id.* at pp. 25, 28, 32.
[118] *Id.* at pp. 29-30.
[119] *Id.*
[120] R. Doc. 23 at 7-8.
[121] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, p. 61.
[122] *Id.* at 60.
[123] *Id.* p. 54.
[124] *Id.* at 29-30.

Murdock and Johnson and pointed out actual inconsistencies in their respective testimonies.

Moreover, Petitioner has not shown a reasonable probability that the outcome of the trial would have been different had defense counsel objected to Murdock's testimony. If anything, it appears likely that defense counsel's launching of such a baseless objection would have only served to further cement Murdock's testimony regarding Johnson's identification of Petitioner as the perpetrator.

Because Petitioner has failed to establish either prong under *Strickland*, he is not entitled to relief as to his claim that counsel was ineffective in failing to object to Murdock's "false" testimony that Johnson identified Petitioner.

### C.    Petitioner has not shown his counsel was ineffective in deciding to not object to the State referencing Petitioner's post-arrest silence.

Petitioner argues his counsel was ineffective in failing to object to the State's reference to Petitioner's post-arrest silence. Specifically, Petitioner argues his counsel should have objected to two lines of questioning: one involving Detective Flores's testimony and one involving Petitioner's testimony.

At trial, Detective Flores testified that, after he advised Petitioner of his rights under the Fifth Amendment, Petitioner informed Flores he did not want to give a statement.[125] The record reflects defense counsel objected to this testimony.[126] Later, during a break in the proceedings, defense counsel moved for a mistrial based on Flores's testimony that Petitioner did not want to give a statement.[127] The trial court denied this

---

[125] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, pp. 122-23.
[126] *Id.*
[127] *Id.* at pp. 162-163.

motion.[128]

While it is true that, in general, the prosecution is prohibited from using a defendant's post-arrest silence as incriminating evidence or for impeachment purposes,[129] it is unclear how defense counsel was ineffective with respect to Flores's testimony, considering the fact that defense counsel objected to Flores's testimony and moved for a mistrial on the basis of Flores's testimony. The fact that defense counsel's arguments were unsuccessful does not render his assistance constitutionally ineffective.[130] In light of the fact that defense counsel objected to Flores's testimony and moved for a mistrial on the basis of Flores's testimony, it is entirely unclear how defense counsel's lodging of additional objections would have produced a different outcome. As a result, Petitioner has neither established that his counsel acted unreasonably nor that he was prejudiced by his counsel's actions.

At trial, the prosecution questioned Petitioner regarding his exit from the club on the night of the incident. Petitioner gave a confusing testimony in which he appears to have testified an incident broke out in the club that required the patrons to leave the club, Petitioner's brother either got involved in the incident or was involved in a separate one, and Petitioner tried to identify himself to individuals connected to his brother's incident.[131] All of these alleged events occurred prior to Petitioner's arrest. Petitioner complains his counsel should have objected to the prosecution's line of questioning regarding his exit from the club because this line of questioning was designed to comment on the fact that Petitioner did not explain his actions to the police when he was arrested.

---

[128] *Id.*
[129] *Doyle v. Ohio*, 426 U.S. 610 (1976).
[130] *See Martinez*, 99 F. App'x. at 543 ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").
[131] State Rec., Vol. 7 of 8, trial transcript of September 26, 2013, pp. 91-93.

The general prohibition from using a defendant's post-arrest silence as incriminating evidence or for impeachment purposes extends to remarks by a prosecutor constituting a comment on a defendant's silence made with the manifest intent to comment on the defendant's silence or made in such fashion that the jury would naturally and necessarily so construe the remark as a comment on the defendant's silence.[132] Petitioner complains that the State should not "be given the benefit of the doubt."[133] However, the Court has no doubt that there is no reasonable way to interpret the prosecutor's line of questioning concerning regarding Petitioner's exit from the club as a comment on the defendant's silence. During this questioning, the prosecutor made no reference to Petitioner's arrest nor his refusal to give a statement to Detective Flores after being arrested. Significantly, the prosecutor strictly asked about events that occurred prior to Petitioner's arrest. Because it would be unreasonable to construe the prosecutor's line of questioning as commentary on Petitioner's post-arrest silence, it was in turn not unreasonable for Petitioner's counsel to not object to the line of questioning on the basis that it constituted an impermissible attempt to elicit testimony regarding Petitioner's post-arrest silence.

Moreover, Petitioner has not established how defense counsel's lodging of a baseless objection to this line of questioning would have resulted in a different outcome. Ironically, because the prosecutor made no comments regarding Petitioner's post-arrest silence during his questioning of Petitioner, if defense counsel had objected to the prosecution's questioning as an attempt to elicit testimony on Petitioner's post-arrest silence, this objection could very well have suggested to the jury Petitioner's post-arrest

---

[132] *United States v. Carter*, 953 F.2d 1449, 1464 (5th Cir. 1992), *cert. denied sub nom.*, *Hammock v. United States*, 504 U.S. 990 (1992).
[133] R. Doc. 23 at 9.

silence as a basis for incrimination. As the Fifth Circuit has explained, "[s]ince an objection may tend to emphasize a particular remark to an otherwise oblivious jury, the effect of objection may be more prejudicial than the original remarks."[134] Accordingly, Petitioner has failed to show that defense counsel's decision to not lodge an objection on this basis was either unreasonable or that he was prejudiced by this strategic decision.

Because Petitioner has failed to establish either prong under *Strickland*, he is not entitled to relief as to his claim that counsel was ineffective in failing to object to comments concerning Petitioner's post-arrest silence.

### D.   Petitioner has not shown his counsel was ineffective in choosing to not question Petitioner about all of his prior convictions.

During trial, on direct examination, Petitioner testified he had prior convictions for possession of marijuana and cocaine in both Jefferson and Orleans Parishes.[135]  On cross examination, Petitioner initially testified he did not recall having two additional prior convictions, one in 2001 and one 2009, for possession with the intent to distribute cocaine.[136] However, Petitioner subsequently admitted he had those two convictions as well as a conviction for possession of marijuana.[137]

Petitioner argues defense counsel was ineffective in failing to raise each of his convictions on direct examination, thereby allowing the State to impeach Petitioner on cross-examination. Specifically, Petitioner claims his counsel was ineffective in not preparing him to effectively testify, the implication being that counsel should have instructed Petitioner to specify all of his prior convictions.

---

[134] *Dodson v. Stephens*, 611 F. App'x 168, 176 (5th Cir. 2011) (quoting *Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970)).
[135]  State Rec., Vol. 7 of 8, trial transcript of September 26, 2013, pp. 85-86.
[136] *Id.* at pp. 87-88.
[137] *Id.*

A trial lawyer's decisions as to whether and how to present a defendant's prior convictions are quintessential acts of trial strategy, and, as a result, are entitled to great deference on review.[138] There are myriad reasons Petitioner's counsel may have reasonably concluded that drawing out all of Petitioner's prior convictions on direct examination was not sound trial strategy. In his objections to the Report and Recommendation, Petitioner argues the mere fact he was impeached is evidence his counsel was deficient in preparing him to testify.[139] However, because Petitioner has not described counsel's preparation of Petitioner nor explained how it was defective, the Court has no way to assess the validity of Petitioner's argument. Moreover, the mere fact that a defendant is impeached does not mean his counsel did not diligently prepare him to testify, as there are a number of reasons a defendant may be impeached, including the defendant's own decision to deviate from his counsel's guidance. Petitioner has not carried his burden in overcoming the strong presumption that his counsel's decision was not a strategic trial decision entitled to great deference.

It is Petitioner's burden to prove a "a reasonable probability"—not just a mere possibility—that the trial would have resulted in a different outcome if he had been prepared in a certain way.[140] Petitioner has failed to describe counsel's preparation of Petitioner or explain how counsel's preparation of Petitioner for trial was ineffective. Without such support, the Court can only speculate as to the probability that Petitioner was adequately or inadequately prepared to testify. As a result, Petitioner has not carried

---

[138] *See, e.g.*, *United States v. Sylvester*, Civ. Action No. 04-094, 2012 WL 3990288, at **16-17 (E.D. La. Sept. 11, 2012) (finding counsel's "strategic decision" not to stipulate to client's prior convictions was not ineffective); *Davis v. Dretke*, Civ. Action No. H-04-2380, 2006 WL 1662956, at **4-5 (S.D. Tex. June 7, 2006) (finding counsel's decision to address client's convictions on direct examination was not ineffective).
[139] R. Doc. 23 at 9.
[140] *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

his burden to show he was prejudiced by counsel's decision to not raise each of Petitioner's convictions on direct examination.

Because Petitioner has failed to establish either prong under *Strickland*, he is not entitled to relief as to his claim that counsel was ineffective in failing to question Petitioner about each of his prior convictions on direct examination.

### E. Petitioner has not shown his counsel was ineffective in the level of professionalism with which counsel conducted himself at trial.

Petitioner's final ineffective assistance claim is that his counsel's "deficient performance, disrespectful attitude, and his unprofessional conduct throughout the course of the trial caused him irreparable prejudice."[141] Petitioner points to the following specific instances as evidence defense counsel acted unprofessionally:[142]

- First, during testimony of LaFleur, the trial judge interrupted the prosecutor, Ms. Reed, and stated: "Gentlemen if you all could have a seat so that the jurors are not capable of seeing the notes that you're taking, I would appreciate it.  And let the record reflect the Defense Counsel and his assistant and the defendant were seated right next to jurors, six, twelve – six and twelve."[143] Defense counsel, Mr. Regan, responded, "Let me assure you, we didn't write any notes for the jury to see."[144] The trial judge responded: "I'm sorry.  That's incorrect.  Ms. Reed you can continue."  Mr. Regan responded: "I respectfully disagree," to which the trial judge reiterated: "I observed writing and I just ask that you move over.  Ms. Reed, continue."[145] Defense counsel stated: "You're suggesting misconduct." The trial judge responded: "[This] will continue outside the presence of the Jury. I have noted on the record what I have personally observed. Ms. Reed, you can continue."[146]

- Next, outside the presence of the jury, defense counsel discussed with the Court his difficulty getting a witness, Chachere, served with a subpoena to appear at trial.[147]  The trial judge informed defense

---

[141] R. Doc. 5-1 at 27.
[142] *Id.* at 27-30.
[143] State Rec., Vol. 6 of 8, trial transcript of September 25, 2013, p. 69.
[144] *Id.*
[145] *Id.*
[146] *Id.*
[147] *Id.* at pp. 209-210.

counsel: "Oh, I'm sorry. No, I don't have anything about personal service. The only thing that has been returned to this Court is from Deputy Vale regarding domiciliary service so if you had personal service, please present it to me."[148] Defense counsel asked the trial judge, "[p]lease, don't yell at me," to which the judge said, "[o]h, I'm not yelling."[149] Defense counsel stated: "I handled this as a professional," and the trial judge responded: "Well, you haven't."[150] Defense counsel insisted: "Let's do this slowly and professionally." The trial judge responded: "Hold up, hold up. You're not going to tell me what to let's [sic] do. You're not going to tell me any instructions because you do not order me around. You have been ignoring my questions. You have been disrespectful. You have been constantly giving comments despite the Court's orders. So once again, this is the order of the Court. Approach with the Instanter that shows personal service of [Chachere]."[151]

- Third, in a separate discussion outside the presence of the jury, defense counsel returned to the matter regarding the taking of notes near the jurors, stating to the trial judge: "I was personally accused of taking notes and showing them to the jury at this point."[152] The trial judge responded: "No, you were not. What I asked you to do, sir, was for you and your associate to move away from the area where the jurors were so they couldn't see any notes that were being taken. The reason why the Court said that is because I am looking at you and I am looking at Mr. Beckman and both of you have pen in hand and pen to paper. Whether or not your [sic] wrote anything, I was making a cautionary remark to have both of you move from that area so that no juror would see any notes."[153] Defense counsel responded: "The words of your, your statement is clear. You suggested that we were cheating and doing the wrong thing at this point." After some back and forth, the trial judge asked: "And so what is your motion? What is it that you'd like to [do?]" Defense counsel answer: "I, at this point ask you to apologize to the jury for that comment you made about me and about us taking notes and sitting there. You suggested two things You suggested, one, that we were, we were, we were cheating and two that the jurors were looking at our notes, which is offensive. It's truly offensive at this point."[154] The trial judge ruled: "[Y]our request is hereby denied because the record is clear that none of the words were stated as you just put on the record so I am offended by the way in which you have interpreted what I said and have misstated what I

---

[148] *Id.* at 210.
[149] *Id.*
[150] *Id.*
[151] *Id.*
[152] *Id.* at pp. 219-220.
[153] *Id.*
[154] *Id.*

said so work on trying to get your tv set up."[155]

- Fourth, in court, after the trial court sustained the State's hearsay objection to Taylor's testimony, an exchange between defense counsel and the trial judge occurred. It began when defense counsel argued the statement should not be excluded, as an exception to hearsay: "It's standard law, Your Honor. This is the Defendant's statement."[156]  The trial judge responded: "Mr. Regan, I'm sorry. You can't say in front of the Jury that it's standard law, giving the appearance that I am ruling against what standard law is. Hearsay is not permissible unless you can provide the Court with an exception to the hearsay rule, which you cannot."[157]

- Finally, outside the presence of the jury, defense counsel asked for additional time for Chachere to appear and for Petitioner to make a final decision as to whether he would testify.[158] The trial judge asked defense counsel multiple times how much time he needed.[159] When defense counsel failed to respond, the trial judge stated: "Mr. Regan, I have never had an attorney as disrespectful as you have been throughout the trial."[160]

At best, Petitioner has established the trial judge found defense counsel to be disrespectful on several occasions. However, Petitioner has not established the outcome of his trial would have been different but for his counsel's disrespectful conduct. Importantly, three of the five exchanges to which Petitioner points to occurred outside the presence of the jury. Accordingly, it is highly unlikely the jury was tainted as a result of these exchanges. Further, Petitioner presents no evidence that the trial judge treated the defense impartially as a result of these exchanges. Although defense counsel charged the trial judge of unfairly accusing defense counsel of unprofessionalism, this charge falls far short of the type of provocation that would warrant the conclusion that the trial judge's

---

[155] *Id.*
[156] State Rec., Vol. 7 of 8, trial transcript of September 26, 2013, pp. 10-11.
[157] *Id.*
[158] *Id.* at pp. 35-36.
[159] *Id.*
[160] *Id.* at p. 36.

impartiality was compromised.[161]

Petitioner likewise has not established the two exchanges that occurred in front of the jury in any way prejudiced him. It is worth noting a heated exchange between judge and attorney does not per se prejudice a defendant. To the contrary, "[w]hile testy exchanges between judges and counsel are unfortunate, they are often understandable and, on occasion, even necessary . . . to [for instance] regain control of the proceedings."[162] In this case, Petitioner points to no evidence that the trial judge was improperly biased as a result of the exchanges in front of the jury. Rather, the record reflects the trial judge did not penalize the defense for defense counsel's disrespectful comments. For instance, the trial signed numerous instanter subpoenas and an order for a private processor, recessed the trial twice, and issued an alias capias for Chachere's arrest in order to assist petitioner in securing Chachere's presence.[163]

Because Petitioner has failed to establish either prong under *Strickland*, he is not entitled to relief as to his claim that Petitioner's defense counsel was ineffective in the level of professionalism with which he conducted himself at trial.

---

[161] *See, e.g., Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971) (finding judge could not have remained impartial after being subjected to "highly personal aspersions, even 'fighting words'—'dirty sonofabitch,' 'dirty tyrannical old dog,' 'stumbling dog,' and 'fool.'" The judge was "charged with running a Spanish Inquisition and told to 'Go to hell' and 'Keep your mouth shut.'")

[162] *Patterson v. Cain*, Civ. Action No. 10-4587, 2011 WL 7962615, at *12-13 (E.D. La. Oct. 14, 2011)

[163] State Rec., Vol. 1 of 8, minute entry dated September 23, 2013; minute entry dated September 24, 2013; minute entry dated September 25, 2013; Motion and Order to Appoint Special Agent for Service of Process filed September 23, 2013; Order dated September 23, 2013; Motion for Instanter Subpoena filed September 23, 2013; Order dated September 23, 2013; Instanter dated September 24, 2013; Motion and Order for Instanter Subpoena Duces Tecum filed September 24, 2013; Order dated September 24, 2013; Instanter dated September 25, 2013; Instanter (for Private Process Server) dated September 25, 2013; Motion and Order for Instanter Subpoena Duces Tecum filed September 25, 2013; Order dated September 25, 2013; Instanter (undated); Instanter dated September 26, 2013; State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, pp. 158-61; State Rec., Vol. 6 of 8, trial transcript of September 25, 2013, pp. 5-6, 80-83, 221-27; State Rec., Vol. 7 of 8, trial transcript of September 26, 2013, pp.4-5, 28-38.

### III.   Petitioner Has Not Established Any Prosecutorial Misconduct Entitling Him to Relief

Petitioner alleges the prosecution engaged in two forms of misconduct. First, by eliciting improper character evidence—to wit, asking Eric Roy, Sr., to describe his son, the victim. Second, by suborning perjury—to wit, eliciting false testimony from Detective Murdock, Detective Flores, Jeremiah LaFleur, Seneca Johnson, Nicole Age, Wendy Wilz, and Caroline Koerner. Both of these claims were properly exhausted in state court.

Because Petitioner does not specifically object to the Magistrate Judge's conclusion that he is not entitled to relief on his claim of prosecutorial misconduct based on suborning perjury, the Court need only review this conclusion to determine whether it is clearly erroneous or contrary to law.[164] The Court finds the Magistrate Judge's analysis and conclusion to be perfectly in line with the law. First, the Magistrate Judge identified the correct legal standard:

> Petitioner's second claim of prosecutorial misconduct relating to the use of false testimony presents a mixed question of law and fact. Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[165]

Next, the Magistrate Judge cited the correct applicable law:

> [A] petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.[166]

Finally, the Magistrate Judge correctly applied the law, holding:

> [P]etitioner argues that the prosecution must have known that it was presenting perjured testimony because of conflicts between the testimony and the statements of different witnesses and because of inconsistencies

---

[164] *See* 28 U.S.C. § 636(b)(1).

[165] R. Doc. 22 at 26 (citing *Harvey v. Cain*, Civ. Action No. 13-2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013); 28 U.S.C. § 2254(d)(1)).

[166] *Id.* at 27 (citing *Duncan v. Cockrell*, 70 F. App'x 741, 744 (5th Cir. 2003)).

between the various witnesses' trial testimony. However, . . . perjury is not established by mere contradictory testimony from witnesses or inconsistencies in a witness's testimony.

. . . Likewise, petitioner has failed to prove that the prosecution directed or procured the alleged false testimony. For these reasons, petitioner has not shown that the state courts' decisions denying this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, relief is not warranted.[167]

As a result, for the reasons stated by the Magistrate Judge, Petitioner is not entitled to relief on his claim of prosecutorial misconduct based on suborning perjury.

The Court turns to Petitioner's claim of prosecutorial misconduct based on eliciting improper character evidence. Because Petitioner objects to the Magistrate Judge's conclusion that he is not entitled to relief on his claim of prosecutorial misconduct based on eliciting improper character evidence,[168] the Court reviews this conclusion de novo.[169]

In assessing charges of prosecutorial misconduct, courts apply a "two-step analysis": "1) whether the prosecutor's comments were improper, and 2) if the comments were improper, whether they prejudiced the defendant's substantive rights."[170] "Regarding the second prong, this court considers 1) the magnitude of the statement's prejudice, 2) the effect of any cautionary instructions given, and 3) the strength of the evidence of the defendant's guilt."[171] Although it is possible for a conviction to be overturned on the basis of a prosecutor's improper comments or questioning, the misconduct "generally must be so pronounced and persistent that it permeates the entire

---

[167] *Id.* at 27-28 (internal quotation marks and citations omitted).
[168] R. Doc. 23 at 6-7.
[169] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[170] *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002) (citing *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999)).
[171] *Id.* at 210-11.

atmosphere of the trial."[172] Importantly, the "touchstone" of the analysis is whether the alleged prosecutorial misconduct permeated "the fairness of the trial"; the focus of the analysis is "not the culpability of the prosecutor."[173]

As described above, at trial, the victim's father gave brief testimony regarding the victim's character in response to the prosecutor's following two questions: (1) "Can you tell the Ladies and Gentlemen of the Jury a little [] about your son?" and (2) "[D]escribe the experience that you had while your son was in [the] hospital."[174] As a result, only once did the prosecutor actually ask the witness to describe his son's character. In response to the request, the victim's father gave the following brief response:

> Well, he's the type of son that most of you wish you would have had.  He was loving, caring, very affectionate, very protective.  Never gave me a day of trouble- twenty-six years of his life.  Matter of fact, I can even go as far as to say even when I was working on my Master's degree, he was in high-school.  He showed me short cuts how to do [sic] – so a very educated, very intelligent young man who'd give you the shirt of his back any date.[175]

Petitioner contends that, because the Magistrate Judge "somewhat acknowledges that the prosecutor presenting character evidence was improper," the Magistrate Judge should have found prosecutorial misconduct was committed.[176] However, as explained above, just because a prosecutor's comments are improper, a petitioner is only entitled to relief on a prosecutorial misconduct charge if the improper conduct prejudiced the defendant's substantive rights.[177] Even assuming the prosecutor's request that Eric Roy, Sr. tell the jury "a little [] about [his] son" was improper, Petitioner has not established

---

[172] *United States v. Castillo*, 77 F.3d 1480, 1497 (5th Cir. 1996) (citation and internal quotation marks omitted).
[173] *Smith v. Phillips*, 455 U.S. 209, 219 (1982).
[174] State Rec., Vol. 5 of 8, trial transcript of September 24, 2013, pp. 14-15.
[175] *Id*. at p. 14.
[176] R. Doc. 23 at 7.
[177] *Duffaut*, 314 F.3d at 210.

this question, nor the testimony it elicited, prejudiced his substantive rights. The question and the testimony in no way implicated Petitioner was the perpetrator of the crime, which was the central issue of the trial. Additionally, as discussed above, because the exchange was very brief, the question and response likely had little to no impact on the overall fairness of the trial. In light of the overwhelming evidence of Petitioner's guilt, the Court cannot say the prosecutor's conduct prejudiced the defendant's substantive rights.

Because Petitioner has shown the prosecutor's conduct prejudiced any of his substantive rights, Petitioner is not entitled to relief on his claim of prosecutorial misconduct based on the prosecutor's questioning of the victim's father about his son's character.

## IV.    Petitioner is not Entitled to Relief on His Claim that he was Denied the Right to Present a Complete Defense

In his final claim for relief, Petitioner argues his counsel was prevented from presenting Petitioner's actual innocence defense because the trial court sustained two of the prosecution's objections to the form of two questions posed by defense counsel in his direct examination of Petitioner. The questions were posed in the following exchange at trial:

Q. Is that you being hauled out of there?

A. No, sir.

Q. Do you know what happened to that fellow once –

MS. REED: Your Honor, I'm going to object to his narrating this video.

MR. REGAN: Do you know –

MS. REED: I'm sorry.  I'm making an objection.  Thank you.  I'm going to object to him narrating.  If he has a specific question, he can ask his client, but to narrate this video, the video speaks for itself.  Thank you.

THE COURT: Defense?

MR. REGAN: The question I have is do you know what happened to the fellow they're hauling out the club?

MS. REED: Same objection, Judge.

MR. REGAN: How is that – that's a question.

MS. REED: I'm –

THE COURT: Wait. I can't hear from both of you.

MS. REED: Thank you. I'm going to object to him narrating this video. The video speaks for itself. For him to try to testify that there's somebody else other than his client being dragged down those stairs is testifying.

THE COURT: Mr. Regan, the whole course can run properly if you can please refrain from testifying, refrain from commentary, and pose the question to the witness.

MR. REGAN: Certainly. Let me try again.

EXAMINATION BY MR. REGAN: Q. Do you Know what happened to the fellow they're pulling off the steps?

A. No, sir.

Q. Okay.  Do you know what happened to him after they hauled him out the club?

MS. REED: Same objection, Judge.

THE COURT: Grounds, State?

MS. REED: The fact that he is leading this person.  He is testifying.

THE COURT: Sustained.  Mr. Regan, if you can just again try to pose your questions wherein you are not suggesting to the witness what response to provide.[178]

Petitioner properly exhausted his complete defense claim in state court. Because

Petitioner specifically objects to the Magistrate Judge's conclusion that Petitioner is not

---

[178] State Rec., Vol. 7 of 8, trial transcript of September 26, 2013, pp. 62-64.

entitled to relief on his complete defense claim,[179] the Court reviews this conclusion de novo.[180]

Although the U.S. Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense,"[181] this guarantee does not afford criminal defendants "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."[182] In his objections to the Report and Recommendation, Petitioner complains the Magistrate Judge "overlooked Cameron's argument that his attorney was actually asking legitimate questions when the prosecutor objected."[183] Whether or not the substance of defense counsel's questions was legitimate is beside the point, as the trial court merely required defense counsel to ask his questions in a different form. The trial court permitted defense counsel to continue questioning Petitioner and did not exclude any evidence as a result of the above exchange. Petitioner cites no cases, and the Court is aware of none, holding that a criminal defendant's right to present a complete defense is violated by defense counsel being required to ask questions on direct examination in a non-leading form.

Contrary to Petitioner's argument, the record reflects he was permitted a meaningful opportunity to present a complete defense. The jury was shown surveillance videos relating to the night in question. Apparently, one of those videos showed a person, who Petitioner testified was someone other than himself, leaving the club on the night of the incident.[184] Petitioner testified he was not the perpetrator who stabbed the victim and

---

[179] R. Doc. 23 at 7.
[180] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[181] *California v. Trombetta*, 467 U.S. 479, 485 (1984).
[182] *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).
[183] R. Doc. 23 at 7.
[184] State Rec., Vol. 7 of 8, trial transcript of September 26, 2013, pp. 62, 64, 68-69. The Court notes the

there was another person at the club who was dressed similarly to Petitioner.[185] During his testimony, Petitioner pointed out the man on the video who was allegedly dressed similarly to Petitioner.[186] Further, the defense presented the testimony of Desere Chachere, who testified Petitioner stood next to her during the entire incident and was not responsible for the victim's death.[187]

For the foregoing reasons, Petitioner has not carried his burden of establishing he was deprived of a meaningful opportunity to present a complete defense. Accordingly, Petitioner is not entitled to relief on this claim.

The Court, having considered the record, the applicable law, relevant filings, and the magistrate judge's Report and Recommendation finds the magistrate judge's findings of fact and conclusions of law are correct and hereby approves the United States Magistrate Judge's Report and Recommendation and **ADOPTS** it as its opinion in this matter.[188]

<u>**CONCLUSION**</u>

**IT IS ORDERED** that Petitioner Michael Cameron's petition against Darrel Vannoy and Jeff Landry be and hereby is **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 18th day of May, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

surveillance videos were not included in the State Record filed in his case.
[185] *Id.* at pp. 73-74-75, 104, 109, 111.
[186] *Id.*
[187] *Id.* at pp. 41-42, 45-46.
[188] R. Doc. 9.